Good morning. Good morning, Your Honor. May it please the Court. Thomas Ogden on behalf of Appellant Millie Ogden. I've been meditating on this case for the last week. I thought I had the meditation clear and I'm sitting here. I don't I know where to begin. It's been plaguing us for 10 years. This is a Wells Fargo sham account. No matter how Mr. Beebe is going to try to characterize it, this is a sham account that we're hearing all about in the news these days. Okay, this is the worst sham account. Our family is the worst sham account victim. We got dragged into two lawsuits because people used it to launder money through. I laid out an allegation. I think I got the pattern. I make an argument that 1028 A7 has never been used, but if I can plead that on a chance to amend, I don't know how you can say direct injury is not attributable when you steal somebody's identity because you want to put them in legal harm's way. Well, if you were given leave to amend, what specific facts would you add in order to survive a motion to dismiss? You said this has been going on forever, so what would you add now? I would add the predicate act so that Judge Gee could then focus and say that we do have a directness of injury on the approximate cause. But you already had the predicate acts there. What specifically would you... I would specifically, if I could add, well, as a threshold, I think I already have the male Y fraud or identity fraud. I think it comes within that when you steal somebody's identity, you open it well as far, you use mails, send it to a different address so she can't find out about it. How do you make it related? You make it related because it is identity fraud. I don't know. She said I had no relatedness. I had no pattern. We have some Supreme Court cases that say that the injury has to be pretty direct, and here what you're claiming is, or in the current complaint, is legal fees, and that was caused by an intervening act of Mr. Ankarun's? Ankarun? Askarun's. Askarun's bringing a lawsuit against Ms. Ogden, which seems to be the sort of intervening act that would, that the Supreme Court has approximate cause requirement. Sure. So how do we get around that? What's your suggestion there? 1028A7, it's an imposter statute. You look at old California case law... Mr. Kwok stole her identity is the allegation, but again the actual cause of the legal fees injury was the the lawsuit. So are you saying there's a different injury, or maybe explain to me? I don't see how that makes a difference. Okay, you can look at it economically in several different ways. In the complaint, the theory is kind of around, revolving around those legal fees. Okay, we made a claim for legal fees, and it's interesting we have a legal fee case right before us. We claimed $730,000 because we were in two lawsuits for five years. We got knocked down to $125,000. Judge Goldsmith in San Francisco, his determination was he couldn't tell because it was unintelligible, excessive. So if he's saying it's excessive, then actually all the work I didn't credit for goes to the identity fraud cleaning up the mess. Maybe it wasn't part of the legal case. Maybe it's direct because we didn't get credit for it. I don't understand that. Okay. Because the legal fees are from the lawsuit. There's nothing else but the lawsuit that that caused the legal fees, and the lawsuit was caused by Mr. Askren's suing Ms. Ogden along with Mr. Kwok and others. I have a footnote in my opening brief referring also to our ordeal trying to get a certificate of factual innocence. That's separate from the San Francisco lawsuit. If Judge Goldsmith didn't credit, he says I was excessive, is he making a determination that those fees are attributable to something else? Okay. I'm cleaning up the mess. I'm trying to get my wife's name back. Did Askren's cause that? He didn't because Judge Goldsmith said this is what you're gonna get. It may be unintelligible, excessive, or padded. Okay. So where's that other work attributed to? Not the lawsuit. There's a footnote in there. I was pursuing a chosen action for the certificate of factual innocence. That his clients went in and told the police, no she's part of it. She was the broker. She opened the account. I was just the Wells Fargo employee who opened the account. And that was in connection with the lawsuit is my understanding. Well part of it was because... Was it in connection with anything else? I mean my understanding was Mr. Askren... It was in connection. It was in connection with California Penal Code 530.8, which gives an identity fraud victim a chosen action to go. Ask a Superior Court judge, issue a certificate of factual innocence. You're an identity fraud victim. So yes, I did allege legal fees, but I'm looking at it differently. Also economically, there's another chosen action. That's a property right now. We don't appear to have additional questions. Okay, I'll reserve my time. Thank you. Thank you, Your Honor. Before I, before we start the clock on, right, the defendants have, or the appellees, have a total of 15 minutes. And I see two people seated there. Can you explain to me who's going to be making argument and what your proposal is for dividing time? Yes, Your Honor. David Martinez of Robbins Kaplan. I will be arguing the matter on behalf of my clients, the individual appellants, appellees, excuse me, Mr. Yim Fong Kwok, Mr. Grant Kwok, and Mr. Howard Suh. Mr. Beebe will be arguing the matter on behalf of Wells Fargo. And we've split the time 50-50. So I'll have, I'll address the court for seven and a half minutes. Okay. All right. Just so that what I'm going to do here is what I will tell you, Wells Fargo, is that in my experience as a judge, a lot of times people go beyond their time. And then the person sitting at counsel table is not really sure what to do, whether to jump up and pull you off the podium or, you know, how to do this. You will get your seven and a half minutes, all right? And if it goes, and you're limited to your seven and a half, unless the court is asking you additional questions. If the court is asking you additional questions, you know, please complete answering those questions and then sit down. And you'll still have seven and a half minutes, okay? Thank you. All right. Go ahead. Thank you, Your Honors. I will be addressing my comments to the court this morning on what I think is the critical issue in the case, and that is whether the district court committed error in not granting Ms. Ogden leave to amend. I think the record shows that the district court did not. The district court, in her order specifically, stated that it would be futile to allow amendment. And I think the record supports that. I'll note that the proposed amendment doesn't really add any facts. It merely changes the label of the complaint from one of mail fraud to one of identity theft. And there are several reasons why the identity theft claim is barred. Well, there seems to be, and I think Judge Acuda was asking appellants about the causation issue or whether there was a break and or whether something was too attenuated. And so it seems to be that it's your best argument that there isn't any causation. But if we weren't to agree with that, what's your Yes, Your Honor. Approximate cause aside, and I agree with the court's analysis on that issue, issue number one is the statute of limitations. This is an issue that we addressed below before the district court. We addressed it in our papers. Counsel had the option to file a reply brief. No reply brief was filed. We believe that that argument has been conceded and that the right to erase it now has been waived. But the identity fraud was discovered in 2007. The statute of limitations for a RICO case is four years and the discovery rule applies to the Ninth Circuit. The plaintiff did not bring her claim until 2014, three years after the statute of limitations expired. So under the Grinnell versus Brown case that we cite in our brief, the claim is barred. That's issue number one. Issue number two is the damages that have been alleged, the injury that has alleged is not a cognizable RICO injury. The Ninth Circuit has said that RICO requires, quote, a concrete financial loss and not mere injury to a valuable intangible property interest. The Ninth Circuit has not recognized attorney's fees as cognizable RICO injuries and I respectfully submit that this is not the case to do so, not on the record that we have before the court. And here's why. The reasonable attorney's fees, the reasonable value of the money, of the time that was spent in defending the San Francisco cases, the time that was spent in cleaning up the identity fraud has already been litigated, adjudged, determined and paid. The paid part is not part of the record because it happened recently but I'm sure that if counsel is asked he can confirm that that judgment has been satisfied. So we have a situation where the injuries are not foreseeable. Are they foreseeable? Are the injuries foreseeable? Foreseeability is part of the proximate cause analysis. It's one of the elements. They may be foreseeable but they don't meet the strict proximate cause standard set forth by the Supreme Court in Holmes and articulated again in the Anza case and the Hemi cases which we cite, which are motion to dismiss cases where the cases for failure to allege proximate cause. So even if they are foreseeable they don't meet the strict proximate cause standard that the Supreme Court has articulated. Again, the direct cause, there has to be a direct link. The direct cause was Mr. Askarans filing two lawsuits in San Francisco suing my clients, not just the plaintiff in this case but my clients as well. That was the direct cause of the alleged injury. So for those reasons, because of the statute of limitations, because there was no cognizable injury to business or property, and because of the lack of counsel, I think the proper analysis on the question of direct cause is whether the violation of the RICO statute directly caused damages to Ms. Ogden. And your position, as I understood it, was the phony bank account did not directly cause her injuries. It was the, as Chesley Kuda put it, the intervening action of Mr. Askarans in causing injury. Isn't that your analysis? Yes, sir. That's exactly right. That's exactly the analysis. There are a number of other issues that I could get into, but I think that they are set forth clearly in the briefs. If the Justice has any questions, I'm happy to answer them. Otherwise, I will yield the time to my colleague. We don't appear to have additional questions. Thank you. Thank you, Your Honors. Well, that's the first time after I said that what people do all the time, they overuse their time, you underused. Good morning, Your Honors, and may it please the Court. Todd Beebe for Wells Fargo Bank. I've heard a number of numbers mentioned. The one that I did not hear mentioned was the subject of the That's all. There's no depositions. It was dismissed for failure to prosecute, no trial, and the California court considered the plaintiff's fee application and ruled that the reasonable and necessary fees incurred defending that action was $125,000, not $730,000 to defend a $40,000 collection action. $125,000. Now, to my eyes, that's incredibly generous for a $40,000 collection action. Plaintiff and counsel are husband and wife. Mrs. Ogden. Let me ask you, did Wells Fargo get any benefit? I'm guessing, what, in addition to alleging substantive RICO violation, must the second amended complaint also specifically allege that Wells Fargo received some financial benefit from the illicit action? Absolutely. That's the Oki Semiconductor case, and in this case, the rest of the complaint alleges how Wells Fargo was the victim of bank fraud. Wells Fargo was also a defendant in the underlying action. Wells Fargo had the privilege of paying its attorneys to defend it from Mr. Askarans. But, Mr. had an account in Wells Fargo for some time, but it occurs to me that if Mr. Askarans put $60,000 in a Wells Fargo account, and then another $20,000 later in the Wells Fargo account, the Wells Fargo account just might have charged him some fees for transferring that money to Kwok and the rest of the inferable from the fact that an account is opened at a profit-making, sometimes, bank? That's exactly what the plaintiff in the Oki Semiconductor case alleged, Your Honor, and this court held that that was not, you know, the incidental fees from opening a bank account were not damages resulting from the RICO activity. Now, the RICO scheme of circumventing creditors of this night club was separate from the incidental fees that might be generated from a bank account. I'm sure the different people involved use telephones. Well, but the bad activity, and the phone company, the fees were not charged Ogden, because she didn't have an account. The fees were charged Askarans, but that's not the commencement of the account. The teaching of the Oki Semiconductor case is that we have to distinguish the RICO activity, defrauding creditors in a nightclub sale, from the incidental commercial activity that goes along with that. You know, if they took a cab there, you know, yellow cab might have made some money, but that's not the RICO violation. If they used telephones, the phone company made some money, but that's not the RICO violation. So trying to unwind your answer here, are you saying, yes, they probably did get a benefit from opening the account or doing things, but that it's not a benefit as to the RICO action? First of all, I'm not conceding that there were any fees paid. That's a fact. That's not on the record. We don't know that. But hypothetically, if there were $5 or $10 in fees, that's not the RICO violation. And the teaching of Oki Semiconductor is that that doesn't open the door to RICO. But let me take a step back. I think we've already talked about the concept that if the court was to reconsider the question of whether attorney's fees are cognizable RICO damages, this is not the case to do that. Because the RICO, the attorney's fees that were reasonably and necessarily incurred have already been litigated, determined, ordered, judgment granted, and fees paid. So Appellant is referring to a certificate of factual innocence that's not related to the lawsuit. Well, the $730,000 is the amount that the plaintiff told the Superior Court was related to the lawsuit. That's the amount he asked for an award and the court said they were excessive. He's not here saying, I spent $730,000 and the court cut that down because it was obviously padded. But in addition to that $730,000, I have some more. Mr. Ogden is here saying he now wants to redefine the fees which he told the court were reasonably and necessarily incurred defending the Oscarone's action. And the court quite properly said that application is wildly excessive. And granted a number which I thought was still high, but it's been determined, it's been litigated, it's been paid. So what is your best argument for affirming the district court in these cases? Like, ask me which of my children is my favorite. I think there are two or three that are the best. First one is this is an attorney's fees case. Attorney's fees are not cognizable in RICO. We don't want to turn RICO into a free-for-all for disappointed litigants to get their fees back in every case. Second one is if there's no attorney, the case against Wells Fargo is strictly responding out superior. Oki's Semiconductor teaches that the scheme has to be to benefit the bank. Not that there's some incidental benefit from opening bank accounts, but the scheme has to be to benefit the bank. And it clearly was not. And the third part of responding out superior is that if the case fails against the individuals, then by definition it fails against the bank as well. If the court has any further questions? We don't appear to. Thank you. I'll just quickly respond to Oki's Semiconductor. Judge Trott decided that basically on but-for causation, the theft occurred prior to the bank accounts being made, created. So he said RICO causation has a but-for approximate cause component. Judge Trott rightfully and logically said, well, wait a second. The theft occurred. How did the bank accounts cause that? That's how it was decided. Our case, the bank account was open. All this stuff happened. So did you get your attorney's fees? I got $125,000. They characterized it as $40,000 at the end of the litigation. Two lawsuits at the beginning were being sued for $10 million up in San Francisco. 30 motions plus 10 pleadings. By the time I got to Judge Goldsmith, it was a $40,000 case. That's why it looked so unreasonable because I got it there. He says, oh, simple failure to prosecute. That's because I got it there because I unwound. It was a liquor license transfer. Okay. I don't really want to go into all of that. But if he's saying. All right. But they said you got $125,000. You said you did get $125,000. Okay. I just want to make sure that that was correct. Then it went up on appeal. I didn't appeal the fee award. I was sick and tired. The first appellate district, Sue Esponte, referred his attorneys to the bar. I came back down and got $40,000 on a single issue appeal. $125,000 for five years of litigation. Nobody understands what an identity fraud victim goes through. Thousands of hours is what it takes. If we're going to say there's no directness on 10-28-87, then who is the victim? What's the purpose of that statute? Ms. Ogden's identity, other than opening the account, was it used in other contexts? I don't remember seeing that in the record. Well, the other context is, or allegation is, she's a victim of Rico Enterprise. Well, no. But when I answer her question, was other than that. Not that we know of. Okay. As to the statute of limitations, I believe that's an affirmative defense. Number two, I don't think Mr. Martinez characterizes it correctly. We had injury, but the question is, in 2007, do we have Rico injury? So that we have to go on a crusade. Look how difficult it is. We shouldn't be here on Rico. The reason we're here on Rico is because identified victims have no contract action, they have no tort action, because banks owe them no duty. What else am I left with? If, are you asking this court in terms of, since what you're asking for is the injury being attorney's fees, has the, is there a Ninth Circuit case that has? The injury, the injury is 1028A7. The restitution statutes were recently amended to specifically recognize that identity fraud victims incur legal harm. Restitution needs to mirror civil damages. I have a case cited. If that's the case, Congressman Schiff, because a district judge in Utah wrote how difficult it is. This lady went through so much harm, I can't give her the fees and the cost she incurred for cleaning up the mess. Okay, Congress amends the restitution statutes to say, judges can now make that award to victims of 1028A7 violations. I cite the RJR Reynolds, the Supreme Court case. They were going with the presumption against extraterritoriality on a Rico issue. Guess how they defeated the presumption? They said, we look to the predicate acts to define the statute. 1028A7 is, we're going against the presumption of the American rule, which is a common law rule. Everybody bears their own cost in litigation. 1028A7 is the Rico predicate act, and according to RJR Reynolds, it defines the statute. So when we look into what damages are to business or property, we look to the predicate act, and if there's a nexus, then I'm going to say, the harm and identity fraud victim incurs to clean up the mess is damage to business or property. I have nothing else, Your Honor. All right, thank you both for your argument. This matter will stand submitted.
judges: Callahan, Bea, Ikuta